UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID A.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No.: 24CV1969-BLM<br><br>**ORDER ON MOTION FOR JUDICIAL REVIEW OF FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**<br><br>**[ECF No. 10]** |

Plaintiff David A.[1] ("Plaintiff" or "Claimant") brought this action for judicial review of the Social Security Commissioner's[2] ("Commissioner" or "Defendant") denial of his claim for Social Security disability insurance benefits  ECF No. 1.  Before the Court are Plaintiff's February 12, 2025 Merit Brief ("Brief") [ECF No. 10] and Defendant's Opposition to Plaintiff's Brief ("Oppo")

---

[1] Pursuant to Civil Local Rule 7.1(e)(6)(b), the Court refers to Plaintiff by first name and last initial.

[2] Frank Bisignano is now the Commissioner of Social Security, and he is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

1

[ECF No. 12]. For the reasons set forth below, Plaintiff's Merit Brief is **DENIED**.

## PROCEDURAL BACKGROUND

On June 16, 2022, Plaintiff filed an application for Title II disability insurance benefits alleging his disability began on April 1, 2021. See Administrative Record ("AR") at 193-194. The application was initially denied on October 19, 2022, and denied upon reconsideration on February 7, 2023. Id. at 104-109, 111-116. Plaintiff filed a written request for a hearing on March 16, 2023. Id. at 117.

On January 23, 2024, a telephonic hearing was held before Administrative Law Judge ("ALJ") James Delphey. Id. at 17. Plaintiff and an impartial vocational expert ("VE") testified. Id. at 35-65. In a written decision dated April 18, 2024, ALJ Delphey determined that Plaintiff was not disabled as defined by the Social Security Act. Id. at 17-29. Plaintiff requested review by the Appeals Council. Id. at 2-3. On September 26, 2024, the Appeals Council denied review of the ALJ's ruling, and the ALJ's decision therefore became the final decision of the Commissioner. Id. at 1-6.

On October 23, 2024, Plaintiff filed the instant action seeking judicial review by the federal district court. See ECF No. 1. On December 20, 2024, the Defendant timely filed the AR. ECF No. 7. On December 23, 2024, the Court issued an order setting mandatory settlement procedures and a briefing schedule. ECF No. 8. Plaintiff filed his merits brief on February 12, 2025 and Defendant filed his opposition to the merit's brief on March 20, 2025. ECF Nos. 10, 12. Plaintiff did not file a reply.

## ALJ's DECISION

On April 18, 2024, the ALJ issued a written decision in which the ALJ determined that Plaintiff was not disabled as defined in the Social Security Act. AR at 17-29. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the relevant time period which is from onset date of April 1, 2021 through his date last insured of December 31, 2021. Id. at 19.

At step two, the ALJ considered all of Plaintiff's medical impairments and determined that

the following impairments were "severe" as defined in the Regulations: "status post COVID infection with hospitalization and tracheostomy; mild multilevel spondylosis without disc herniation, spinal stenosis or nerve root impingement; incipient neuropathy of lower extremities; left biceps/left shoulder strain with impingement syndrome (20 CFR 404.1520(c))." Id. at 18. At step three, the ALJ found that Plaintiff's medically determinable impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). Id. At step four, the ALJ considered Plaintiff's impairments and determined that his residual functional capacity ("RFC") permitted him

> to perform medium work as defined in 20 CFR 404.1567(c) except lift and/or carry up to 50 lbs. occasionally and 25 lbs. frequently; can stand and/or walk up to 6 hours a day per 8-hour day; can sit without limitation in an 8-hour day; frequently climb ramps or stairs; occasionally climb ladders, ropes or scaffolds; occasionally push or pull with the bilateral lower extremities; occasional overhead direction reaching with the left upper extremity; no concentrated exposure to fumes, odors, dusts, pulmonary irritants, gases or poor ventilation.

Id. at 21. The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; [] the claimant's statements concerning the intensity, persistence and limiting effects of long-continuing COVID-related symptoms are not entirely consistent with, or well substantiated by, the medical evidence and other evidence in the record." Id. at 22. The ALJ also found that Plaintiff was capable of "performing past relevant work as a microcomputer support specialist" through the date last insured because this work "did not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity." Id. at 27. Accordingly, the ALJ found that Plaintiff was not disabled during the relevant disability period. Id. at 29.

## **STANDARD OF REVIEW**

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence

and contains no legal error.  Id.; see also Miner v. Berryhill, 722 Fed.Appx. 632, 633 (9th Cir. 2018) (We review the district court's decision de novo, disturbing the denial of benefit only if the decision "contains legal error or is not supported by substantial evidence." (quoting Tommasetti v. Astrue, 522 F.3d 1035, 1038 (9th Cir. 2008)).

Substantial evidence is "more than a mere scintilla but may be less than a preponderance." Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2011) (quoting Molina v. Astrue, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (quotation marks and citation omitted), *superseded by regulation on other grounds*).  It is relevant evidence that a reasonable person might accept as adequate to support a conclusion after considering the entire record.  Ahearn, 988 F.3d at 1115; see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Mar for Mar v. Saul, 838 Fed.Appx. 290, 291 (9th Cir. 2021) (holding that substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (citation omitted)).  "In determining whether the Commissioner's findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." Laursen v. Barnhard, 127 Fed.Appx. 311, 312 (9th Cir. 2005) (quoting Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)).  Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision.  See Ahearn, 988 F.3d at 1115–16 (citing Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)).  This includes deferring to the ALJ's credibility determination and resolution of evidentiary conflicts.  See Ahearn, 988 F.3d at 1115 ("[t]he ALJ is responsible for determining credibility resolving conflicts in medical testimony, and for resolving ambiguities," and "we reverse only if the ALJ's decision was not supported by substantial evidence in the record as a whole") (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standard in weighing the evidence and reaching his or her decision.  See Miner, 722 Fed.Appx. at 633.  Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the

1  Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court also may remand the matter
2  to the Social Security Administration for further proceedings. Id.

## DISCUSSION

Plaintiff presents a single argument to support his request to reverse the ALJ's decision. See Brief. Plaintiff argues that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for rejecting his subjective symptom testimony. Id. at 3. Specifically, Plaintiff argues that the ALJ "merely summarized the relevant medical history, omitting key facts and context, and offered isolated instances of purported inconsistencies as reasons to find [Plaintiff's] testimony unsupported." Id. at 12.

Defendant contends that the ALJ reasonably discounted Plaintiff's subjective symptom testimony as it was inconsistent with objective medical evidence, Plaintiff's improvement through treatment, and his own statements to medical providers. Oppo. at 3-4. Defendant also contends that an unchallenged medical source opinion supports the ALJ's decision to discount Plaintiff's subjective claims as well as the stated RFC. Id. at 8.

### A. Relevant Law

The Ninth Circuit has established a two-part test for evaluating a claimant's subjective symptoms. See Zuniga v. Saul, 801 Fed. Appx. 465, 466 (9th Cir. 2019) (citing Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)). The claimant, however, need not prove that the impairment reasonably could be expected to produce the alleged degree of pain or other symptoms; the claimant need only prove that the impairment reasonably could be expected to produce some degree of pain or other symptom. Id. If the claimant satisfies the first element and there is no evidence of malingering, then the ALJ "can [only] reject the claimant's testimony about the severity of her symptoms . . . by offering specific, clear and convincing reasons for

doing so." Id. (internal quotation marks and citation omitted).³  When a claimant presents objective medical evidence "establishing an impairment that could 'reasonably produce the symptoms of which she complains, an adverse credibility finding must be based on clear and convincing reasons.' " Smartt v. Kijakazi, 53 F.4th 489, 497 (9th Cir. 2022) (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008)). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." Werlein v. Berryhill, 725 Fed. Appx. 534, 535 (9th Cir. 2018) (quoting Tommasetti, 533 F.3d at 1039 (quoting Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002)).

When weighing the claimant's testimony, "an ALJ may consider . . . reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citation omitted).  An ALJ also may consider the claimant's work record and testimony from doctors and third parties regarding the "nature, severity, and effect of the symptoms" of which the claimant complains.  Thomas, 278 F.3d at 958–59 (internal quotation marks and citation omitted); see also 20 C.F.R. § 404.1529(c).  If the ALJ's finding is supported by substantial evidence, the court may not second-guess his or her decision.  See Thomas, 278 F.3d at 959; Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (where the ALJ's credibility assessment is supported by substantial evidence, it will not be disturbed even where some of the reasons for discrediting a claimant's testimony were improper).

As an initial matter, neither party contests the ALJ's determination that Plaintiff has the following severe impairments: "status post COVID infection with hospitalization and tracheostomy; mild multilevel spondylosis without disc herniation, spinal stenosis or nerve root

---

³ The Commissioner contends that the "clear and convincing" standard is inconsistent with the deferential "substantial evidence" standard set forth in 42 U.S.C. § 405(g). Oppo. at 3, fn. 3. Regardless, the Commissioner contends that the "ALJ's findings pass the Ninth Circuit's test." Id.

1  impingement; incipient neuropathy of lower extremities; left biceps/left shoulder strain with
2  impingement syndrome (20 CFR 404.1520(c))." AR at 18. Because the ALJ determined that
3  Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged
4  symptoms," the first prong of the ALJ's inquiry regarding Plaintiff's subjective symptoms is
5  satisfied. Id. at 22; see also Lingenfelter, 504 F.3d at 1036. Furthermore, neither party alleges
6  that the ALJ found that Plaintiff was malingering. See generally Brief; Oppo. As a result, the
7  Court must determine whether the ALJ provided clear and convincing reasons, supported by
8  substantial evidence, for discounting Plaintiff's subjective claims regarding his symptoms. See
9  Lingenfelter, 504 F.3d at 1036.

### B. Plaintiff's Testimony

Plaintiff testified that in April of 2021 he became ill with a fever of 104 and was eventually hospitalized after being diagnosed with COVID. AR at 44. Plaintiff remembers being admitted into the hospital but does not remember the following two months of hospitalization because he was "comatose" and placed on a ventilator. Id. at 43.

Plaintiff testified that he suffers from long COVID symptoms and that his "biggest issue" is his "shortness of breath." Id. at 49. Plaintiff explained that he cannot work because "anything and everything" that he does causes him to become "winded." Id. Plaintiff also explained that he has difficulty performing basic functions due to "brain fog" and experiences significant short-term memory problems including "forget[ing] ideas in mid-sentence," and "transpos[ing] words and numbers." Id. Plaintiff also claimed he had "severe neuropathy" on his legs, quads, feet, and the "back of [his] sole." Id. Plaintiff stated that the neuropathy consisted of "severe burning" that limits his ability to walk. Id. Plaintiff testified that he had "whole body aches," would often lose his equilibrium, and that certain movements caused him "excruciating pain." Id. In summary, Plaintiff testified that his "shortness of breath" and "neuropathy . . . limit[] [him] from doing normal walking and normal tasks." Id. at 52.

/ / /
/ / /
/ / /

Plaintiff testified that he went to physical therapy but it did not help much. Id. at 51. He explained that he always had a therapist at his side and the exercises "were not high, you know, because of my shortness of breath and my neuropathy issues and my body aches of course." Id. Plaintiff concluded that "they worked with me on these little simple exercises and that's the extent of that." Id.

When asked by the ALJ whether he had told his physicians in November of 2022 that he was "looking for work," Plaintiff testified he did not "recall saying such a thing." AR at 50. Plaintiff stated that he did not "know where that comes from" because "it is clear to me that I am, you know, disabled. I have no ability to work." Id.

When asked by the ALJ if he had experienced any improvement in his health since he had COVID, Plaintiff testified:

> Actually, I would have to say it is still a problem. I have gone through a bunch of – how do I say this – what do you call – pain medications that they have tried various types and they have not done anything to improve my health. So the meds that I'm taking now that the doctor has prescribed to me I (unintelligible) like I was tell[ing] you that I don't feel any improvement with it and so that's your answer. I feel the excruciating pain from my neuropathy, my body aches, my brain fog is a huge problem my struggles with that. So that's – nothing has changed.

Id. at 51.

The ALJ questioned Plaintiff about his medical records that showed exams indicating "normal strength, normal gait," and that Plaintiff was "doing home exercises," along with "riding a stationary bike." Id. at 52. Plaintiff denied doing aerobic exercises, including riding a stationary bike, but testified that he had a portable "pedal thing" that he could use while sitting. Id. Plaintiff testified to using oxygen only when he is going to physical therapy to "assist [him] with [his] breathing." Id. at 54-55.

C.   Objective Medical Evidence

The Ninth Circuit recently clarified the law governing how ALJs may consider objective medical evidence and inconsistent statements. Smartt, 53 F.4th at 496. In Smartt, among other

arguments, the plaintiff appealed her denial of Social Security disability insurance benefits on the grounds that the ALJ erred in discounting her subjective pain testimony and self-reported limitations. Id. at 496-97. The plaintiff relied on Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005) to argue that an ALJ may not "reject a claimant's subjective complaints based solely on lack of medical evidence to fully corroborate the alleged severity of pain." Smartt, 53 F.4th at 498 (quoting Burch, 400 F.3d at 680). The Smartt court clarified the Burch decision, holding that "[w]hen objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Id. The court explained that prior Ninth Circuit decisions make clear that "an ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to' the Social Security Act" and contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony. Id. at 499.

Here, the ALJ stated that Plaintiff's "statements concerning the intensity, persistence and limiting effects of long-continuing COVID-related symptoms are not entirely consistent with, or well-substantiated by, the medical evidence and other evidence in the record[.]" AR at 22. The ALJ noted that Plaintiff testified that the main reason he was unable to work was his severe shortness of breath which left him winded when he attempted to engage in any activity. AR at 21 (citing AR 49-50). Plaintiff also stated that he was experiencing long-COVID symptoms, including brain fog, and denied any improvements after having COVID. AR at 21-22 (citing AR 51).

In analyzing Plaintiff's claimed symptoms, the ALJ acknowledged that Plaintiff "had a severe and serious case of COVID-19 infection" that "resulted in a lengthy hospitalization of about two months and further period of recovery including physical therapy." AR at 27. The ALJ found that Plaintiff "eventually made a good recovery within 12 months of his alleged onset date." Id. The ALJ analyzed Plaintiff's medical records and cited to evidence in these records that demonstrated Plaintiff's claims were inconsistent with the medical record. Id. at 22-27.

First, the ALJ noted that when Plaintiff was initially discharged from the hospital, the medical records indicated that his "discharge diagnoses were vent dependent respiratory failure

s/p tracheostomy improving, COVID-19 severe much improved, etc." AR at 22 (citing 2F/59, 121, 160, 163). After spending one week in a "long-term acute facility," Plaintiff was discharged with notations that he "tolerated extensive physical therapy" and his cognitive impairment "improved significantly." AR at 22 (citing Ex. 13F at 11-12). After discharge, Plaintiff received 24 sessions of physical therapy for "generalized deconditioning" from June to August 2021. AR 23 (Ex. 10F/2-101). Plaintiff "self-discharged" from physical therapy on September 29, 2021 and according to the September 2021 discharge notes, Plaintiff "improved over 50% since starting PT with improved breathing, increased strength, and increased ability to navigate stairs." Id. (citing 3F at 5). The Court has reviewed the records cited by the ALJ and find that they provide substantial evidence supporting the ALJ's conclusion that the objective medical evidence does not support Plaintiff's claim that he had not improved and that his shortness of breath prevented him from working.

The ALJ highlighted that Plaintiff had a physical therapy re-evaluation in October 2021, where he reported he "has been feeling good on his time off" and he went to "Yellowstone [National Park] were he pushed himself hiking." AR at 23 (citing Ex. 10F at 96). Plaintiff challenges this evidence, arguing that the "ALJ never examines what exactly [Plaintiff] was capable of at Yellowstone." Brief at 9. Plaintiff does not provide any authority that would require the ALJ to examine further the amount of hiking Plaintiff did in Yellowstone and the Court finds that hiking, as an activity, is inconsistent with Plaintiff's testimony that he is unable to work because "anything and everything" that he does leaves him "winded." AR at 49. See Lewis v. Colvin, 2015 WL 4507172, at *5 (C.D. Cal. July 23, 2015) (finding that hiking was inconsistent with symptom testimony) (citing Rollins, 261 F.3d at 857).

Second, the ALJ identified evidence in the record showing that Plaintiff returned to physical therapy in November 2021 and his condition continued to improve with physical therapy. AR at 23-24 (citing Ex. 9F at 3). Over the course of Plaintiff's physical therapy sessions from November 2021 to July 2022, it was consistently noted that Plaintiff was progressing well, required fewer rest breaks, and maintained stable oxygen levels while exercising. Id. at 25 (citing Ex. 10F at 24, 30, 39, 51, 54, 56, 58, 63, 74). These records provide further evidence

undermining Plaintiff's claim that he had not improved and that he was unable to work. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999) (claims of a lack of improvement may be rejected by pointing to clear and convincing evidence that directly undermine them).

Third, the ALJ cited to objective medical evidence that Plaintiff's pulmonary function test scores ("PFT")[4], showed improvement over time. AR at 23 (citing Ex. 9F at 3, 22-25, Ex. 16 at 19). In July 2021, Plaintiff's PFT showed "severe restriction" but "no significant" bronchodilation. Id. at 23 (citing Ex. 9F at 22). In October 2021, Plaintiff's PFT indicated "moderate severe restriction" in his lungs which improved to "moderate restriction" in November 2021. Id. (citing Ex. 9F at 23-24). By April 2022, Plaintiff's PFT score indicated "mild restriction." Id. (citing Ex. 9F at 25).

Plaintiff argues that the ALJ "cherry picks" the evidence by pointing to a PFT in July 2022 that showed a regression to "moderate restriction" and confirmed a "worsening of restriction and some obstruction too." Brief at 10 (citing Ex. 9F at 5; 16F at 1). "ALJs must review the whole record; they cannot cherry-pick evidence to support their findings." Bostwick v. Colvin, Case No. 13cv1936-LAB (MDD), 2015 WL 12532350, at *2 (S.D. Cal. Mar. 30, 2015) (citing Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001)). While the ALJ did not reference the July 2022 PFT, the ALJ did cite to a subsequent PFT in January 2023, not referenced by Plaintiff, that indicated an improvement to "mild restriction" and "no significant bronchodil." AR at 23 (citing 16F at 19). After reviewing and considering all of the medical evidence, the Court finds that even if Plaintiff did show a regression at one specific point in time, the medical records as a whole demonstrate that he had steady progress and improvement in his PFTs over time and that the medical records provide clear and convincing evidence undermining Plaintiff's subjective statement that his shortness of breath prevents him from working.

Fourth, the ALJ cited to evidence in the record regarding Plaintiff's use of oxygen (O2)

---

[4] PFT is a test to "determine how well your lungs work." See https://my.clevelandclinic.org/health/diagnostics/17966-pulmonary-function-testing (Website last visited May 19, 2025.)

and found it was inconsistent with his testimony that the oxygen canisters "don't help [him] at all" while doing an activity such as "try[ing] to take a walk outside." Id. at 23, 55. The ALJ pointed to evidence in the record where Plaintiff reported that he was using oxygen in October 2021 and "gets great benefit from O2." Id. at 23 (citing Ex. 9F at 3). Similarly, Plaintiff testified that he only used the oxygen canisters during his physical therapy sessions. Id. at 55. This evidence further undermines Plaintiff's subjective claims.

Fifth, Plaintiff argues that the ALJ improperly discounted his testimony regarding his limitations due to neuropathy. Brief at 10. Specifically, Plaintiff asserts that his "severe neuropathy is confirmed via EMG and his lower extremity function has been consistently reported" and supports his testimony "regarding his lower extremity problems." Id. (citing Ex. 3F at 2; 8F at 7). Contrary to Plaintiff's argument, the ALJ considered the medical evidence identified by Plaintiff including the progress notes for an examination by Dr. Sudhir Malik on September 21, 2022. AR at 25 (citing Ex. 8F at 6-9). Dr. Malik noted that Plaintiff reported his strength was "approximately 80% of normal" and he was able to "ambulate, climb up and down stairs, get in and out of a car." Id. (citing Ex. 8F at 7). The progress notes also state that Plaintiff had "normal muscle mass, tone, strength at 5/5 in the bilateral upper and lower extremities, proximal and distal without asterixis, pronator drift or tremors." Id. Plaintiff's "stance and gate were normal, and he was able to stand on tiptoe and heel and walk heel-to-toe." Id. The Court has reviewed Dr. Malik's records and finds that the ALJ accurately relied on them. As such, the records provide substantial evidence supporting the ALJ's conclusion that the objective medical record is inconsistent with the limitations claimed by Plaintiff based on his neuropathy. Plaintiff's disagreement with the ALJ's analysis and conclusion does not constitute a basis to reverse the ALJ's decision. See Ahearn, 988 F.3d at 1115-16 (where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision).

Finally, during the hearing, Plaintiff testified to having "brain fog," including difficulty with memory and concentration, due to Covid [AR at 51, 56)] but Plaintiff does not argue in his moving papers that the ALJ erred in failing to articulate clear and convincing reasons for

discounting Plaintiff's testimony regarding these symptoms. See Brief. Nonetheless, the Court finds that the ALJ properly discounted Plaintiff's subjective testimony regarding his "brain fog" because it was inconsistent with the evidence in the record. Id. at 24 (citing Ex. 8F at 17). Specifically, the ALJ pointed to the neurological exam by Dr. Malik who found Plaintiff to be "awake, alert, and oriented" with normal registration, attention span, and short-term memory. Id. Plaintiff's "remote memory" was "preserved." Id. Dr. Malik found Plaintiff's "fund of information appropriate for [his] age" and his judgment to be fair. Id. Plaintiff could also follow three step instructions. Id. This medical examination undercuts Plaintiff's claims that he struggles with memory and concentration and Plaintiff does not challenge these findings in his brief. "Contradiction with the medical record is sufficient basis for rejecting the Plaintiff's subjective testimony." Smartt, 53 F.4th at 499 (quoting Carmickle, 533 F.3d at 1161).

For the reasons set forth above, the Court finds there is substantial evidence supporting the ALJ's conclusion that the objective medical record is inconsistent with the self-reported limitations claimed by Plaintiff and that this is a clear and convincing reason to discount Plaintiff's subjective testimony. See Smartt, 53 F.4th at 498. The Court further finds that the inconsistency between Plaintiff's subjective claims and the objective medical evidence regarding his self-reported limitations is a valid and permissible reason for discounting Plaintiff's claims.

D. Medical Source Opinion

Defendant contends that the medical source opinions provide another clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's subjective claims. Oppo. at 8-9. Defendant notes that the ALJ relied on medical source statements, including the opinion of Dr. Vakas Sial who performed the internal medicine consultative examination of Plaintiff, "to evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms and to assess his limitations." Id. Plaintiff does not challenge Dr. Sial's opinion or the ALJ's finding that this opinion was persuasive. See Brief. Moreover, Plaintiff did not file a reply and therefore does not dispute Defendant's argument that Dr. Sial's opinion provides an independent basis for discounting Plaintiff's subjective claims.

///

The ALJ found that Dr. Sial's opinion is the "only substantive medical opinion available" and was "overall persuasive because it was based on a detailed exam with knowledge of [Plaintiff's] health/COVID history." AR 26. The ALJ carefully reviewed and analyzed Dr. Sial's examination and medical findings. Id. at 25-26. Relevant to the arguments raised in Plaintiff's Brief, the ALJ noted that Dr. Sial found that "[w]ith the lungs, breath sounds were symmetric. There were no rhonchi or rales. The expiratory phase was within normal limits" and Plaintiff "had good muscle tone, good active motion, and 5/5 strength in all extremities." Id. at 26. Dr. Sial further found that Plaintiff had a normal gait, did not walk with a limp, and had no need for an assistive device to ambulate. Id. The Court has reviewed Dr. Sial's report and finds that the ALJ accurately summarized Dr. Sial's findings. Ex. 12F. Based on the examination, Dr. Sial opined that Plaintiff could carry up to 50 pounds occasionally, 25 pounds frequently, stand or walk six hours in an eight hour workday, frequently climb, balance, and stoop, and kneel, bend, and crawl "with no limitations." Id. at 7.

The only significant and relevant limitation identified by Dr. Sial was that Plaintiff needed to avoid moderate exposure to fumes, odors, dust, gases, and poor ventilation. Id. The ALJ incorporated this limitation in the RFC. AR at 21. The ALJ also modified Dr. Sial's functional assessment by including restrictions to "occasionally push and pull with the bilateral lower extremities" and "occasional overhead direction reaching with the left upper extremity." AR at 26. The ALJ determined these adjustments were necessary "based on independent consideration of the record and hearing testimony." Id. Dr. Sial's examination and opinions provide substantial evidence supporting the RFC, which Plaintiff does not challenge. Dr. Sial's opinions also provide an independent clear and convincing reason for discounting Plaintiff's subjective claims, which Plaintiff also does not challenge.

E.   Harmless error

Plaintiff contends that the ALJ erred when he stated that Plaintiff "was not compliant with taking his medication as prescribed." Brief at 10. The ALJ made this finding by pointing to the November 10, 2022 examination by Dr. Malik who noted that the Plaintiff had been prescribed "Pregabilin 50 mg twice daily" in June 2022 but it was "uncertain how a 90-day prescription from

1  June 22, 2022 had lasted to November 2022." AR 25 (citing Ex. 15F at 1).  The ALJ did not err
2  by referencing this note in the medical record because it was reasonable to interpret this entry
3  as casting doubt on Plaintiff's consistency in taking his medication as prescribed.

4  Plaintiff also contends that the ALJ erred when he noted that Plaintiff had informed a
5  medical provider that he was looking for work in October of 2021.  Brief at 11 (citing AR at 25).
6  Plaintiff argues that even assuming he made this statement, it is not relevant because it did not
7  describe the type of work Plaintiff was seeking to obtain.  Id.  Even if he was seeking work,
8  Plaintiff argues that the "ability to perform a light job is consistent with [Plaintiff's] claim of
9  disability." Id.  The cited section merely states that the medical records indicate Plaintiff told a
10 provider that he was looking for work, and that Plaintiff denied the statement during this
11 testimony; it does not indicate that the ALJ relied on this discrepancy.  AR at 25.

12 Even if the ALJ did err by considering Plaintiff's alleged failure to consistently take his
13 medication or his alleged job search, any such error would be harmless. Harmless error occurs
14 if the error is inconsequential to the ultimate non-disability determination. See Robbins v. Soc.
15 Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); see also Stout v. Comm'r, Soc. Sec. Admin.,
16 454 F.3d 1050, 1055-56 (9th Cir. 2006). Errors that do not affect the ultimate result are
17 harmless. See Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007). An ALJ's error may be deemed
18 harmless if, in light of the other reasons supporting the overall finding, it can be concluded that
19 the error did not "affect[ ] the ALJ's conclusion." Batson, 359 F.3d at 1197.

20 The ALJ provided clear and convincing reasons supported by substantial evidence in the
21 the objective medical record, as well as the medical opinion of Dr. Sial, for discounting Plaintiff's
22 subjective claims.  Accordingly, an error in the ALJ's evaluation of Plaintiff's medication
23 compliance or consideration of Plaintiff's search for employment, is harmless as to the decision
24 to discount Plaintiff's symptom testimony. See Molina v. Astrue, 674 F.3d 1104, 1115. (9th Cir.
25 2012) (when the ALJ provides valid reasons supported by the record for disbelieving a claimant's
26 testimony, the provision of one or more invalid reasons is harmless error).

27 / / /
28 / / /

# CONCLUSION

Based on the above, the Court **DENIES** Plaintiff's Merit Brief and upholds the Commissioner's decision.

**IT IS SO ORDERED**.

Dated: 8/5/2025

Hon. Barbara L. Major
United States Magistrate Judge